IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**TROY A. EASTON,**

        Plaintiff,

    v.

**CAROLYN W. COLVIN**
Commissioner of Social Security,

        Defendant.

_____

Civil No. 6:14-cv-01538-CL

**OPINION & ORDER**

Kathryn Tassinari
Brent Wells
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
        Of Attorneys for Plaintiff

Billy J. Williams
Acting United States Attorney
District of Oregon
Janice E. Hebert
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

Sarah Moum
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104
          Of Attorneys for Defendant

CLARKE, Magistrate Judge:

Plaintiff Troy A. Easton ("Easton") seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is reversed and this case remanded for further proceedings consistent with this Opinion and Order.

## BACKGROUND

Born on February 6, 1968, Easton applied for benefits on February 28, 2011. Tr. 157, 161. He initially alleged disability on May 17, 2011, but subsequently amended the onset date to September 14, 2012. *Id.*, tr. 38. The Commissioner denied his application initially and upon reconsideration. Tr. 110, 115, 125, 129. An Administrative Law Judge ("ALJ") held a hearing on September 13, 2013. Tr. 35-69. The ALJ issued a decision finding Easton not disabled on September 20, 2013. Tr. 18-28. The Appeals Council declined review on July 31, 2014. Tr. 1-4. Easton now

appeals to this Court.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404. 1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404. 1520(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404. 1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work, the ALJ proceeds to step five.

Page 3 – OPINION & ORDER

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404. 1520(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 404.1566.

## THE ALJ'S FINDINGS

The ALJ found Easton had the following severe impairments: ulcerative colitis and spinal disorder. Tr. 20. However, the ALJ found that neither of the impairments, singly or in combination, met a Listing under the Act. Tr. 21. The ALJ concluded that Easton retained the RFC to perform medium work, except that he needs to avoid concentrated exposure to moving machinery, heights, and similar hazards. Tr. 22. Considering the RFC, the Vocational Expert ("VE") testified Easton could perform his past relevant work as a chemical preparer and inventory clerk. Tr. 26. Accordingly, the ALJ found Easton not disabled. Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a

Page 4 – OPINION & ORDER

preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This Court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The Court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193. However, this Court may not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Easton asserts the ALJ erred by failing to (1) provide adequate rationales for discounting his testimony; (2) fully credit the medical opinion testimony of Sedrick Salisbury, M.D.; (3) properly assess lay witness testimony; and (4) find him disabled at step five of the sequential evaluation process.

### I. Plaintiff's Credibility

The ALJ impugned Easton's credibility based on several rationales, concluding he was not impaired to the degree alleged. Tr. 25. The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503

Page 5 – OPINION & ORDER

F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other testimony that appears less than candid . . . ." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins*, 466 F.3d at 882. Nonetheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

Easton argues the ALJ erroneously assessed his reported activities of daily living ("ADLs"). Testimony regarding ADLs may impugn a plaintiff's credibility in one of two ways: first, if a plaintiff's reported ADLs contradict earlier testimony; or second, as circumstantial evidence a plaintiff is not disabled because the ADLs meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ indicated Easton was "able to engage in a range of activities" consistent with the RFC finding, noting Easton could do household chores, prepare meals, shop, and occasionally mow his lawn. Tr. 23. However, even if Easton is able to engage in a range of activities consistent with medium work, the ALJ failed to make specific findings relating to how his activities transfer to a work setting. *Orn*, 495 F.3d at 639 (quoting *Burch*

Page 6 – OPINION & ORDER

*v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). The fact that Easton is able to perform some ADLs

does not necessarily translate to the ability to perform full-time work as defined by the Act. *See Fair*

*v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to

what may be the more grueling environment of the workplace, where it might be impossible to

periodically rest or take medication."). The Ninth Circuit has long held that claimants should not be

punished for attempting to lead normal lives despite their impairments, and need not be relegated

to "vegetat[ing] in a dark room" in order to be deemed disabled under the Act. *See Reddick*, 157 F.3d

at 722 (9th Cir. 1998); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quotation omitted). The

ALJ's first rationale is erroneous.

Prior inconsistent testimony regarding ADLs is also a legitimate rationale for discrediting a

claimant. For example, the ALJ found Easton's statement that "he rarely leaves his home because

he is afraid of having an accident" inconsistent with the fact he made the 45-minute drive to the

hearing himself. Tr. 23, 39. The ALJ's rationale does not withstand scrutiny, however, as Easton did

not testify that he was unable to drive, or that his ulcerative colitis always prevents him from

participating in an activity for 45 consecutive minutes. Further, Easton testified that although he did

not stop for the duration of the drive, he was having stomach pain and used the restroom upon

arrival. Tr. 39. The ALJ's finding lacks merit.

The ALJ also discredited Easton's testimony that he did not venture out in public very often,

although he indicated in his functional report that he went outside every day, walked, drove, shopped

once a week, and regularly attended church. Tr. 23, 227-29. Easton contends his condition worsened

after completing his functional report in 2011 such that he was not able to do some of the things he

previously testified to by the time of the 2013 hearing. Pl.'s Br. 13. Indeed, Easton testified that his

Page 7 – OPINION & ORDER

colitis condition worsened since 2011, so he now rarely goes out, has difficulty shopping for more than an hour at a time, and no longer attends church regularly. Tr. 47-50. The Commissioner offers no rebuttal to Easton's assertion that his condition worsened, and the ALJ acknowledged that worsening occurred in late 2012 and early 2013. Tr. 24. By ignoring evidence of Easton's worsening condition when comparing his reported activities two years prior, the ALJ failed to provide clear and convincing reasons for discrediting his symptom allegations. *Smolen*, 80 F.3d at 1281.

The ALJ also found Easton's enrollment in school evinced greater functioning than alleged. Tr. 23. Specifically, the ALJ reported Easton was "attending school online" after his onset date. *Id.* However, as Easton alleges his condition requires numerous unscheduled breaks rather than exertional limitations, the ALJ's reasoning fails for the same reason his analysis of Easton's ADLs fails – the ALJ did not identify how the testimony was inconsistent with prior testimony or, alternatively, how attending online courses transfers to full-time, medium-exertion employment. *Orn*, 495 F.3d at 639. Unlike full-time competitive employment, online course work normally allows opportunities to take unscheduled breaks; as such, the ALJ's rationale lacks merit.

Further, issues surrounding Easton's employment history were invoked in the ALJ's credibility analysis. The ALJ indicated Easton had been attempting to obtain employment with a computer company in January 2013. Tr. 23, 394. However, that fact is of limited import as Easton's treating physician, Dr. Salisbury, noted Easton would "ultimately need intermittent FMLA for his inflammatory bowel disease" if he was hired. Tr. 394.

The ALJ also pointed out that Easton lost his job at Hewlett-Packard due to a layoff, rather than reasons related to his impairment. Tr. 23. It is permissible for an ALJ to rely on a claimant's report that he stopped working because he was laid off rather than due to medical conditions. *See*

Page 8 – OPINION & ORDER

*Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). However, here, Easton explained that he utilized FMLA during his employment with Hewlett-Packard, and also that his condition worsened after he left. Tr. 41. Such evidence suggests that although Easton was still able to retain his job, his impairment was at least intermittently problematic, and that it subsequently worsened. These facts mirror Easton's testimony regarding the worsening of his condition, which supports, rather than detracts from, his credibility. Finally, Easton was laid off by Hewlett-Packard three years prior to his alleged onset date. For these reasons, the ALJ's rationale does not meet the clear-and-convincing standard.

The ALJ also noted Easton's employment with the Galt Foundation, which lasted until the September 2012 onset date. Tr. 23. While Easton testified that he left the Galt Foundation when his project ended, the ALJ overlooked testimony that the foundation specifically catered to disabled workers, and allowed him "to use that bathroom anytime" he needed. Tr. 53. Moreover, as above, Easton indicated he missed some days of work due to his colitis, and that his condition worsened after leaving in 2011. Tr. 52-53. The ALJ's rationale is legally deficient.

In April 2013, Dr. Salisbury reported Easton had recently been working as a janitor. Tr. 23, 388. Easton does not dispute he was working as a janitor at the time, though there is no evidence whether the janitorial work was on a regular and continuing basis. *See* Social Security Ruling ("SSR") 96-8p *available at* 1996 WL 374184, at *2 ("regular and continuing basis" means 8 hours per day, 5 days per week). Although it is the ALJ's duty to fully develop the record, the ALJ failed to investigate the circumstances of Easton's janitorial work. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen*, 80 F.3d at 1288). Without specific knowledge of

Page 9 – OPINION & ORDER

Easton's janitorial job, the ALJ cannot legitimately assess whether the work hours and/or activities at issue contradict his symptom allegations. The ALJ's reasoning is, therefore, invalid.

Easton's testimony regarding pain complaints aside from ulcerative colitis was also discussed by the ALJ, who stated "the objective medical evidence does not support the degree of limitation alleged." Tr. 23. The ALJ based his finding on imaging studies which revealed a mild cervical bulging disc, mild foraminal narrowing, an unremarkable lumbar MRI, and intact reflexes and strength without neurological deficiencies. Tr. 23-24. However, Easton was explicit in testifying that although he has back and neck pain, it does not prevent him from working; rather, it is his ulcerative colitis that precludes work. Tr. 51.

The ALJ also indicated that despite Easton's claim that he lost 30 pounds, "there is nothing in the medical report that would support his claim." Tr. 24. Easton testified that in the month leading up to the September 13, 2013 hearing date, he "lost about 30 pounds . . . over the course of the medicine I was allergic to . . . ." Tr. 45. The record reflects that Easton reported weight loss in a July 2013 phone call to his doctor's office related to an adverse reaction to mercaptourine. Tr. 411. Although the ALJ found "there was no way to verify this [weight loss] information," the absence of objective medical evidence alone does not provide a clear and convincing reason to discredit Easton's testimony. *See Reddick*, 157 F.3d at 724 (the evidence upon which the ALJ relies must be substantial). In addition, the ALJ's assertion that the "evidence shows no significant weight loss as might reasonably be expected if [Easton's] symptoms were as significant as alleged since his onset date" is not supported in the record or by any medical opinion. Easton did not allege he had significant weight loss beginning on or around his onset date.

The ALJ also discredited Easton's testimony that his doctors did not want him to take prednisone for extended periods, despite its reported efficacy. Tr. 25. However, the ALJ failed to acknowledge that Easton was consistently prescribed prednisone in tapering doses over short-term periods. Tr. 286, 334, 404, 410, 460-61, 463. Further, his physicians regularly indicated that he should attempt to use a different drug after his prednisone courses were completed. Tr. 386, 410, 463. Accordingly, the medical evidence is consistent with Easton's testimony. Easton does not dispute that prednisone was effective in treating his ulcerative colitis symptoms; accordingly, there is no inconsistency regarding the efficacy of prednisone. However, the substantial evidence also supports Easton's assertion that prednisone is not a viable long-term solution, as indicated by Dr. Salisbury. Tr. 455. Accordingly, the ALJ's finding that the prednisone "largely controls" Easton's symptoms is not a clear and convincing rationale on this record. Tr. 25; Pl.'s Br. 16.

Moreover, neither the ALJ nor Commissioner addressed Easton's argument that he is precluded from obtaining effective treatment due to financial barriers. Tr. 44-45. Easton's assertion is supported by a statement from Dr. Salisbury. Tr. 455. Financial constraints to treatment were also noted by a nurse practitioner in Dr. Salisbury's office. Tr. 410. The Ninth Circuit is clear: "disability benefits may not be denied because of a plaintiff's failure to obtain treatment he cannot obtain for lack of funds." *Orn*, 495 F.3d at 638 (quoting *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Thus, the ALJ's failure to provide specific and legitimate reasons for discounting his allegation of financial barriers to treatment was harmful error.

For all the reasons discussed above, remand is necessary.

//

//

Page 11 – OPINION & ORDER

## II. Medical Opinion Evidence

Easton argues the ALJ improperly discredited the medical opinion evidence of treating physician, Dr. Salisbury. The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must give clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often by entitled to the greatest, if not controlling, weight. *Orn*, 495 F.3d at 633 (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citation omitted). On this record, the treating and examining doctors' opinions are contradicted by the state medical examiners. Tr. 20-21. Accordingly, the ALJ's reasons for rejecting the treating and examining physicians must be specific and legitimate, and supported by substantial evidence. *See Garrison*, 759 F.3d at 1012.

Dr. Salisbury endorsed a statement provided by Easton's attorney on August 19, 2013. Tr. 455. The doctor indicated Easton's ulcerative colitis condition necessitated frequent bathroom use which had increased over the past year. *Id.* The statement noted that Easton spent 70% of his time in the bathroom since going off of prednisone. *Id.*

The ALJ purported to give Dr. Salisbury's statement "some weight," though "little weight" was given to the allegation that Easton spent 70% of his time in the bathroom, as it was based on Easton's self-report. Tr. 25. It is appropriate for an ALJ to discredit a doctor whose opinion is based on a plaintiff's self-reports. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). Easton does not contend the "70%" figure was not based on his own self-report. Further, Dr. Salisbury did not provide any objective findings or analysis in support of the restriction. Accordingly, the ALJ did not err in according the statement little weight.

The ALJ also noted Easton's symptoms were "under good control" through May 2013, evincing a duration of less than one year. *Id.* In support, the Commissioner proffers a May 2013 chart note written by Dr. Salisbury, which states Easton's "Apriso" medication works very well,  and is managing 80% of his symptoms. Tr. 330. The doctor also indicated Apriso "controlled" Easton's ulcerative colitis. Tr. 332. Easton argues his colitis was not under good control prior to May 2013, as he had a flare-up in December 2012. Tr. 334. Easton also argues he had "an improvement in gastrointestinal symptoms," but continued to experience fatigue, and had "urgent loose stools." Pl.'s Br. 18; Pl.'s Reply 5. It was also noted that despite Dr. Salisbury's statement that Apriso was controlling Easton's symptoms, the doctor nevertheless indicated that an "alternate medication" might be more beneficial. Tr. 333. However, despite statements expressing doubts about the efficacy of Easton's medication, Dr. Salisbury's May 2013 chart note reports "good control" through May 2013. As the ALJ is the proper arbiter of ambiguities in the medical record, his finding was not erroneous. Even if more than one rational interpretation of the evidence is possible, the court is obliged to defer to the rational interpretation provided by ALJ. *Batson*, 359 F.3d at 1193.

While the ALJ did not err in discounting the medical opinions discussed above, the ALJ failed to adequately address Dr. Salisbury's August 13, 2013 statement that "there are treatment options that could (likely) cure or improve Mr. Easton's condition, but unfortunately he has not been able to pursue those treatments because he has neither the money nor insurance to pay for the treatment." Tr. 455, *see* tr. 25. The ALJ purported to accord the statement weight, explaining, "it shows the claimant's symptoms are controlled on prednisone, and that there are treatment options available to the claimant." Tr. 25. However, Dr. Salisbury's statement is at odds with the ALJ's finding, as the doctor indicated Easton is unable to pursue viable treatments due to financial barriers. *See supra.*

To the extent the ALJ assumed prednisone was one of the available treatment options in making his finding, the medical evidence is consistent with Easton's testimony that even if Easton could afford it, prednisone is not a viable long-term solution for treating his colitis. *See* Tr. 44, 386, 410, 463. Dr. Salisbury's August 22, 2013 assertion Easton "has not been able to pursue" treatment options is also consistent with Easton's assertions that his Apriso is no longer effective, even if it was 80% effective in May 2013. Tr. 455. Thus, to the extent the ALJ did not assess whether Easton's condition worsened after May 2013 due to diminishing efficacy of his medications, non-viability of long-term prednisone use, or financial barriers to those or other medications, further development of Dr. Salisbury's assessment is necessary. In short, the ALJ must provide legally sufficient reasons to disregard Dr. Salisbury's opinion that viable treatment options are *not* available to Easton. Remand is necessary to resolve this issue.

//

//

Page 14 – OPINION & ORDER

### III. Lay Witness Testimony

The ALJ accorded little weight to the testimony provided by the two lay witnesses. In order for an ALJ to reject the testimony of a lay witness, he must present "reasons germane to each witness for doing so." *Lewis v. Apfel*, 236, F.3d 503, 511 (9th Cir. 2001). Easton's mother, Sonja Lake, reported some impairment in ADLs and a frequent need to visit the bathroom. Tr. 203-10, 262. The ALJ indicated the degree of limitation alleged by Ms. Lake was not reflected in the medical record. Tr. 26. The ALJ further noted Ms. Lake did not report Easton's "periods of good functioning and control on medication" as documented in the record. *Id.* Independent review of Ms. Lake's assessment reflect limited detail regarding the severity of Easton's impairments. Tr. 203-10. Ms. Lake indicated minimal impairment with regard to ADLs in her functional report, but greater impairment in her August 2013 letter. *Compare* tr. 204-07 *to* tr. 262. She noted Easton has issues with focus and needs to use the restroom frequently, which limits his ability to go places. Tr. 204, 262. While the ALJ found Ms. Lake's testimony was not consistent with Easton's own functional report, he did not acknowledge Easton's allegation of worsening after the 2011 functional report. Further, while Ms. Lake did not explicitly reference Easton's periods of good functioning and control on medication, her changing observations between the two dates is consistent with Easton's allegations of worsening. Accordingly, the ALJ's reason for discounting Ms. Lake's testimony was not germane.

Easton's nephew, Anthony Middleton, also provided written testimony. While the ALJ found his testimony incongruent to the medical evidence, independent review by the court finds the opposite to be true. Tr. 260. Mr. Middleton explained that Easton's condition required him to use the bathroom frequently, resulted in him staying home, and caused interruptions throughout the day.

Page 15 – OPINION & ORDER

*Id.* Mr. Middleton also reported Easton's fatigue. Both of Mr. Middleton's observations are consistent with the record as a whole.

For these reasons, the ALJ failed to provide germane reasons for discounting the testimony of the lay witnesses.

## IV. RFC Formulation and Step Five Errors

Easton assigns error to the ALJ's RFC formulation and subsequent finding that Easton can return to his past relevant work. Specifically, Easton argues the RFC fails to encapsulate his "unpredictable intermittent periods during which he must leave his job to use the restroom." Pl.'s Br. 20. The ALJ did not include any provision regarding Easton's allegedly frequent need for restroom breaks in the RFC. *See* tr. 22. As discussed, the ALJ nonetheless offered a legally sufficient basis for rejecting Dr. Salisbury's opinion that Easton was "spending 70% of the time in the restroom since he stopped taking prednisone." *See supra.* However, while the ALJ accepted Dr. Salisbury's May 2013 report that Apriso contains 80% of Easton's colitis symptoms, he did not address the doctor's further report that even when the medication is working, Easton continued to have "symptoms of abdominal pain, urgent loose stool, and fatigue." Tr. 330. Such symptoms are corroborated by nearly every source of record. Moreover, the ALJ did not provide legally sufficient reasons to discount Easton's – or the lay witnesses' – testimony regarding the frequency and severity of his ulcerative colitis symptoms. *See supra.*

Additionally, the ALJ fashioned the RFC under the assumption that prednisone was an effective long-term treatment option: "the evidence shows the prednisone was successful [in controlling colitis symptoms]." Tr. 26. The ALJ's conclusion, however, was based in part on discrediting Easton's testimony that his Aprio medication is no longer effective, and his testimony

that prednisone is not a viable solution. Tr. 25. Similarly, Dr. Salisbury indicated that treatments which might cure or improve Easton's symptoms were not available to him, which the ALJ failed to adequately address. Tr. 455. Because the ALJ's RFC formulation was based on erroneously discredited testimony and medical evidence, it is not supported by substantial evidence. Consequently, the VE's testimony based on the faulty RFC is of no evidentiary value, so the ALJ's step four determination that Easton can perform his past relevant work is also erroneous. *See Lewis* 236 F.3d at 517. Remand is required to resolve these issues.

## V. Remand for Further Proceedings

The remaining issue is whether to remand for further proceedings or to award benefits. 42 U.S.C. § 405(g); *Garrison*, 759 F.3d at 1019. The Ninth Circuit has articulated the credit-as-true rule as a means to determine whether to remand for immediate calculation and award of benefits. *Garrison*, 759 F.3d at 1019. The rule requires three requisites be met: first, the record has been fully developed and further proceedings would not serve any useful purpose; second, the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether it is the plaintiff's testimony or medical opinion; and third, if the improperly discredited evidence were credited as true, the ALJ would be obligated to find Plaintiff disabled on remand. *Id.* (citations omitted). However, even where all three requisites are met, but "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled," further proceedings are appropriate. *Id.* at 1021; *see also Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014).

As discussed above, the ALJ did not adequately assess Easton's credibility, failed to provide reasons to disregard a portion of the medical evidence provided by Dr. Salisbury, and did not proffer germane reasons to discredit the lay witnesses, which resulted in an erroneous RFC and step four

Page 17 – OPINION & ORDER

finding. Easton argues the case should be remanded for immediate payment of benefits, as the ALJ made alternative findings based on tardiness, absenteeism, and urgent bathroom breaks. Tr. 66-67. However, doubt remains regarding whether Easton is disabled based on evidence that he recently worked as a janitor, whether certain medications will reasonably control his symptoms, and if he meets the twelve-month durational requirement. Therefore, further development of the record is required before an affirmative disability determination can be made. On remand, the ALJ should:

(1) Allow Easton to supplement the evidentiary record and reconvene a hearing;

(2) Develop the record regarding the circumstances around his 2013 janitorial work and establish the degree to which his alleged impairments affected his performance on the job, and whether the circumstances surrounding that employment impact the weight accorded to the testimony of Easton, the lay witnesses, and/or medical opinions;

(3) Further develop whether Easton's condition worsened after May 2013 due to changing efficacy of his medications, and further develop which, if any, medications are medically and financially viable in order to provide an accurate formulation of Easton's RFC;

(4) Reassess the credibility of Easton and the lay witnesses, and provide legally sufficient reasons for discrediting any medical opinion evidence, including evidence of barriers to treatment;

(5) Determine if Easton's impairments meet the twelve-month durational requirements of the Act; and

(6) Issue a new decision.

//

//

Page 18 – OPINION & ORDER

## **CONCLUSION**

Because the Commissioner's final decision is not supported by substantial evidence and free from harmful legal error, the decision should be REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

DATED this ___ day of November, 2015.

_____
Mark D. Clarke
United States Magistrate Judge

Page 19 – OPINION & ORDER